(No. 7140. April 12, 1944.)

C. E. CARRINGTON, Appellant, v. LYNN CRANDALL, NORMA DUSTIN and MRS. NORMA DUSTIN, RALPH BYRNE and MRS. RALPH BYRNE, HENRY BATES and MRS. HENRY BATES, BEATRICE M. KRITCHLOW, MRS. GEORGE E. WOOD, ORAL WOOD, DWIGHT WOOD, GOLDEN R. WOOD, ELWIN WOOD, CLIFFORD WOOD, DARREL WOOD, infant, GLORIA WOOD, infant; said infants by and through their guardian ad litem, Golden R. Wood, Respondents.

[147 Pac. (2d) 1009.]

A. A. Merrill, L. H. Merrill, and Black & Black for appellant.

S. H. Atchley for respondents.

AILSHIE, J.—The original complaint in this action was to quiet title to the waters of Mahogany Creek in Teton county. By amendment 4A to the complaint, appellant claimed adverse possession, and that respondents had abandoned their decreed rights by failing for more than five years to apply the waters to a beneficial use.

By the Snake River Decree, dated December 16, 1910, the following water rights, among others, were awarded the parties in this action or their predecessors in interest:

"C. E. Carrington, plaintiff, 160 miner's inches with priority of May 26, 1900, in Mahogany Creek;

Norma Dustin and Mrs. Norma Dustin, by mesne conveyances from George W. Allen, 160 miner's inches in Mahogany Creek, with priority of May 26, 1900;

Ralph Byrne and Mrs. Ralph Byrne, also by mesne conveyances from said George W. Allen, 20 miner's inches in Mahogany Creek with priority of May 26, 1900;

Golden R. Wood, Mrs. George E. Wood and the other Wood defendants herein, 160 miner's inches in said Mahogany Creek with priority of June 1, 1893, being a portion of the waters of said creek so decreed to one Samuel L. Wood."

In addition to the above rights, the following rights were acquired to the "high waters" of Mahogany Creek:

"Norma Dustin and Mrs. Norma Dustin, 160 miner's inches with priority of June 1, 1925; for Lots 1 & 2, Sec. 7-4-45;

Henry Bates and Mrs. Henry Bates, 100 miner's inches with priority of June 1, 1924, for Lots 3 & 4, Sec. 7-4-45."

Demurrer to the complaint was overruled. Cross-complaint by the several defendants, praying for adjudication of their rights under the Snake River Decree, was filed. The cause was tried to the court, without a jury. Nonsuit was granted as to plaintiff, Eleanore Patterson.

The court found, among other things, as follows:

## "II.

"That the defendants and their predecessors in interest, and each and every one of them, have applied to beneficial use upon their respective lands, the water rights so decreed, and that since the entry of said Snake River Decree there has not been any period of five consecutive years that the water under said decreed rights, or any of them, was not applied to beneficial use upon the lands to which said waters were made appurtenant by said decree.

## "III.

"That the plaintiff, C. E. Carrington has, at various times, attempted to take for his own use the water flowing to the defendants and their predecessors in interest under said decreed rights, but that each time the defendants and their predecessors in interest reclaimed said water, and the plaintiff has not at any time had the use of the water under said decreed rights, or any part thereof, for a period of five years.

## "IV.

"That during low water season there is not sufficient

flow in said Mahogany Creek to fill all of the decreed rights under said Snake River Decree and the same must necessarily be pro-rated; that proper measuring devices have never been installed and maintained by means of which a watermaster could properly and effectively distribute the waters thereof.

. . . .

"VI.

"That certain of the defendants have appropriated to beneficial use some of the high waters of said Mahogany Creek to be used during high water season when there is more than sufficient flow with which to fill the decreed rights. . . .

"VII.

"That defendant Lynn Crandall is, and has been for many years last past, the watermaster of district 36 of Idaho; that he has not interfered with the water rights of plaintiff C. E. Carrington."

From the foregoing findings, the court concluded, *inter alia:*

"I.

"That the defendants and their predecessors in interest, or any of them, have not abandoned their decreed water rights set forth in the Snake River Decree of 1910, in the waters of Mahogany Creek, Teton County, Idaho.

"II.

"That the plaintiff C. E. Carrington, or any person claiming under him, has not acquired by adverse use or appropriation to beneficial use, or otherwise, any of the waters of said Mahogany Creek so decreed to said defendants and their predecessors in interest.

"III.

"That the defendants Norma Dustin and Mrs. Norma Dustin, Henry Bates and Mrs. Henry Bates, have, by appropriation to beneficial use, they and their predecessors in interest, the high waters of said Mahogany Creek, acquired the following additional high water rights therein:

"Mr. Norma Dustin and Mrs. Norma Dustin, 160 miner's inches with priority of June 1, 1925;

"Henry Bates and Mrs. Henry Bates, 100 miner's inches with priority of June 1, 1924.

. . . . .

## "V.

"That proper measuring devices for the division of the waters of said stream should be installed, and the Court hereby reserves the right to make further orders accordingly upon proper application being made by any party, or parties, in interest.

## "VI.

"That the defendants are entitled to have their respective rights quieted as against the plaintiff C. E. Carrington, and all persons claiming through or under him, and a decree restraining and enjoining said plaintiff from asserting any right, title or interest in or to any of said water rights so held by said defendants or interfering therewith."

From a judgment in favor of defendants, plaintiff, Carrington, has appealed.

A great many errors are assigned but they may all be considered under four divisions:

(a)    That the evidence is not sufficient to support the finding and conclusion of the court, that defendants and their predecessors in interest have not abandoned their decreed water rights, set forth in the Snake River Decree of 1910, to the waters of Mahogany Creek;

(b)    Plaintiff, Carrington, or any persons claiming under him, has not acquired, by adverse use or appropriation to beneficial use, any of the waters of Mahogany Creek decreed to defendants and their predecessors in interest;

(c)    That the court erred in not finding and holding that defendants, claiming the Allen decreed water, are barred by estoppel and laches on the part of defendants and their predecessors in interest, by reason of long delay and acquiescence in plaintiff's use of the waters;

(d)    That the court erred in its findings and judgment, in decreeing the *high waters* of Mahogany Creek, on the ground that there was both lack of proof and necessary parties.

The record, comprising about 2100 folios, together with numerous exhibits, is too voluminous to justify any attempt at digesting or analyzing the evidence in the space of an opinion. However, examination and consideration of the entire case convinces us, that the trial court was fully justi-

fied in holding that no abandonment of respondents' water right was shown.

Here we are not only confronted with the rule, that, where there is substantial evidence to support the findings of the trial court, we can not interfere with the judgment based thereon (*Smith v. Clearwater County,* 65 Ida. 271, 143 P. (2d) 561, and cases cited; *Dickey v. Clarke,* 65 Ida. 247, 142 P. (2d) 597, and cases cited); but we are also confronted with the further and supplementary rule applicable in this case, that abandonment of real property right can not be declared except upon *clear and convincing evidence.*

The evidence is conflicting, indefinite, and inconclusive. That, however, is accounted for in some measure by the number of years (more than thirty) covered by the oral testimony, lapses of memory, and the further fact, that the proofs are made up largely of the testimony of witnesses, each of whom was only familiar with the property for a comparatively short space of time, at different intervals. One thing, however, is quite apparent, from the testimony given on both sides, and that is, that there was more or less fussing and squabbling over this water for a long period of years. It seems to be undisputed, that at one time appellant joined in installing a headgate that would divide the water equally between his land and the Allen lands. Thereafter appellant would turn the full head of water on to his premises, and immediately one of the respondents would turn off his share (one-half of the flow) on to the Allen lands.

It is well established in this state, "that it requires very convincing and satisfactory proofs to support a forfeiture by abandonment of a real property right." (*Perry v. Reynolds,* 63 Ida. 457, 464, 122 P. (2d) 508.

" 'Abandonment may be shown by the facts and circumstances, but clear proof is required to make out a case.' . . . (*Sullivan C. Co. v. Twin Falls A. Co.,* 44 Ida. 520, 526, 258 P. 529.)"

See also *St. John Irr. Co. v. Danforth,* 50 Ida. 513, 516, 298 P. 365; *Zezi v. Lightfoot,* 57 Ida. 707, 713, 68 P. (2d) 50.

An abandonment of a water right, under sec. 41-216, I. C. A., must have been continuous for five consecutive years. *Zezi v. Lightfoot, supra.* It is also true that, although statutory abandonment did actually occur,

the forfeiture is not effective if, after the five-year period, the original owner or appropriator resumed the use of the water prior to the claim of right by a third party. *Ramshorn Ditch Co. v. United States,* 269 Fed. 80, 84.

It has been held that, under a statute like ours, proof of *intent* to abandon is not required where reliance is placed on a *non-user for the full period of five years as prescribed by the statute.* In *Lindblom v. Round Valley Water Co.,* 178 Cal. 450, 173 P. 994, 996, the supreme court of California said: "Under sec. 1411, [same as sec. 41-104, I. C. A.] however, non-user ends the right, regardless of the appropriator's intent."

■ What has just been said relates to forfeiture (abandonment as it is designated by the statute, sec. 41-216, I. C. A.). While the statute designates it as "abandonment", it is in fact a *statutory forfeiture.* There is, however, another kind of abandonment which is *actual,* not dependent upon length of time, the essential element of which is *intent* to

"Leave, quit, renounce, resign, surrender, relinquish, vacate, . . . discard, . . . Abandon denotes the absolute giving up of an object, often with the further implication of its surrender to the mercy of something or someone else."

(*Webster's New Internatl. Dictionary,* 1941; *Joyce v. Murphy Land etc., Co.,* 35 Ida. 549, 555, 208 P. 241.) Such intent does not appear in this case with any degree of clarity or certainty required by the decisions of this court, as cited above.

■ The evidence wholly fails to establish a case of adverse possession in favor of appellant, under the provisions of sec. 5-210, I. C. A. Possession of appellant, if any, has been merely a "scrambling possession". *Spiers v. Duane,* 54 Cal. 176, 177; *Jones v. Czaza,* 19 Tenn. App. 327, 86 S. W. (2d) 1096, 1098; *Webb v. Griffin,* 243 Ala. 468, 10 So. (2d) 458, 460; 26 C. J., p. 817, sec. 44, 36 C. J. S., sec. 10, Forcible Entry & Detainer. The occupation by appellant, such as it has been, was intermittently interrupted and irregular and not wholly under assertion of right; nor is there any evidence of payment of taxes. A mere intention to occupy and possess a claim is not sufficient. *Pleasants v Henry,* 36 Ida. 728, 729, 213 P. 565.

■ The contention, that respondents are bound by the

application of the rule of laches and equitable estoppel is not thought to be sound or tenable under the facts of this case. Here there was a lack of acquiescence in appellant's claim, and no substantial expenditure appears to have been made upon the claim of ownership, as was the case in *Hillcrest Irr. Dist. v. Nampa & Meridian Irr. Dist.*, 57 Ida. 403, 66 P. (2d) 115, relied upon by appellant.

Paragraph No. 3 of the judgment provides as follows:

"3. That the defendants Norma Dustin and Mrs. Norma Dustin, Henry Bates and Mrs. Henry Bates, have acquired, through their predecessors in interest and through their own efforts, by appropriation to beneficial use, the high waters of said Mahogany Creek as follows:

Mr. Norma Dustin and Mrs. Norma Dustin, 160 miner's inches with priority of June 1, 1925, for Lots 1 & 2, Sec. 7-4-45;

Henry Bates and Mrs. Henry Bates, 100 miner's inches with priority of June 1, 1924, for Lots 3 & 4, Sec. 7-4-45, all of which is in said Mahogany Creek, Teton County, Idaho." Appellant insists that this part of the judgment was erroneously entered and, in support of assignment of error, says:

"The court, in its findings and in subdivisions 3 of the judgment (assignment of error No. 3) adjudged that the defendants Norma Dustin and Bates acquired new rights by appropriation and use to high water of Mahogany Creek. Such a provision in the decree is clearly erroneous.

In the first place, there is no definite way of determining the shutoff period between the high water belonging to the decreed rights of Mahogany Creek and when that is shut off so the decreed rights would begin. There were many people in the decree, entitled to the waters of Mahogany Creek as decreed. None of those parties were parties in this suit except Norma Dustin and wife, and Henry Bates and wife."

There is evidence which seems to support the finding and judgment as to the appropriation and use of the high waters of Mahogany Creek. The decree is binding as to all parties to the action but, of course, it will not be a bar to any person who is not a party or privy to this action. Moreover, the contingency, which appellant anticipates, seems to be provided for in paragraph 5 of the decree which reads as follows:

"5. Owing to the disclosure that proper measuring devices have not been installed and maintained in said Mahogany Creek for the purpose of making equitable distribution of the waters thereof, the Court hereby retains jurisdiction of the question of distribution, so that further orders may be made affecting same, upon application being made by any party, or parties, in interest at any future date."

The court has accordingly retained jurisdiction of the case, for the purpose of granting relief to any aggrieved party upon "the question of distribution."

We find no error in the judgment in the foregoing respects.

Judgment affirmed with costs to respondents.

Holden, C. J., and Givens and Dunlap, JJ., concur.

Budge, J., sat at the hearing but did not participate in the decision.